UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA - SHREVEPORT DIVISION

ARCHIE POE                          *        CIVIL ACTION NO:
                                    *
v.                                  *        JUDGE
                                    *
DR .BRUCE FULLER; and               *
DR. PAMELA HEARNS
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**COMPLAINT FOR DAMAGES/PERMANENT INJURY**

NOW INTO COURT, through undersigned counsel, comes Mr. ARCHIE POE, for all injuries incurred as a result of the actions of Defendant in deliberate indifference to constitutional rights or other causes as follows:

1.

Jurisdiction

The jurisdiction of this Honorable Court is invoked Pursuant to 28 USC § 1331 "Federal Question" accordingly Plaintiff specifically seeks relief pursuant to 28 USC § 1983, et seq., and the Constitution of the United States for injuries, damages and other losses as well as supplemental jurisdiction pursuant to 28 USC § 1367 over all state law claims.

2.

EXHAUSTION

ARCHIE POE has exhausted through 2nd step all Administrative Remedies Procedures available to him on March 14, 2017, through DWCC-2016-1077.

3.

Venue

Venue is proper pursuant to 28 USC § 1391 (b)(1)(2) in that the Defendant resides in or around Claiborne Parish and ARCHIE POE was housed at DWCC at the time of his injury and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

4.

Parties

**PLAINTIFF**:

**ARCHIE POE** is a major who during material times herein is and was incarcerated in the David Wade Correctional Center, DOC #346496, where he sustained injuries, but who is now housed in Terrebonne Parish.

5.

**DEFENDANT(S)**

**DR. BRUCE FULLER**, a resident of the full age of majority domiciled in the Parish of Claiborne, State of Louisiana, and working at David Wade Correctional Center and who was acting under color of state law when he failed, refused to provide appropriate medical treatment in deliberate indifference to a serious medical condition and who is sued in his individual capacity and who is amenable to process personal or in his absence on any employee of suitable age and discernment located at his place of employment, the David Wade Correctional Center, located in Homer, La..

**DR. PAMELA HEARNS**, a resident of the full age of majority domiciled in the Parish of Claiborne, State of Louisiana, and working at David Wade Correctional Center and who was acting under color of state law when she failed, refused to provide appropriate medical treatment in deliberate indifference to a serious medical condition and who is sued in her individual capacity and who is amenable to process personal or in her absence on any employee of suitable age and discernment located at her place of employment, the David Wade Correctional Center, located in Homer, La..

6.

**GENERAL ALLEGATIONS**

Prior to his incarceration, in 1999 when he was 23 years old, following a car wreck ARCHIE POE had a total hip replacement with a device that has been recalled.  The

implant may have been too small, because it soon caused a fracture and failure.

7.

The car wreck took place when ARCHIE POE was eleven (11) years old at which time his right hip was damaged.  ARCHIE POE had pins placed in his left hip as a result of surgery not being done on the right hip shortly thereafter.  ARCHIE POE had a total hip replacement.

8.

The failure seen on x-ray in January 2014 indicated a peri prosthetic femoral shaft fracture and loosening of the implant.

9.

At the time, ARCHIE POE was being treated by a doctor who advised that he was having complications replacing a similar hip implant and he wanted to wait to see the outcome of the other case.  ARCHIE POE opted instead to see another doctor.  Before the other surgeon could replace the failed hip, ARCHIE POE was imprisoned.

10.

Once he reached Lincoln Parish Detention Center, his crutches were taken from him by Dr. Pam Hearns.  Dr. Pam Hearns advised that if he needed surgery, he was not getting it, because he should have had it before he came to jail.

11.

ARCHIE POE asked her to get his records from Lake Charles to see the condition, but she refused.  ARCHIE POE obtained his records and then gave them to Dr. Pam Hearns, who immediately shipped him to Elayn Hunt correctional Center.

12.

The medical staff at EHCC noted that the hip had failed and gave him a cane and pain relief.  The medical staff at EHCC scheduled him for hip replacement surgery.  Before he could have the surgery, he was transferred to David Wade where again he was under

the care of Dr. Pam Hearns.

13.

Upon his arrival,  Dr. Pam Hearns told ARCHIE POE. that she does not know who there would approve his surgery that was set in the records that came from EHCC.

14.

Dr. Hearn told ARCHIE POE,  he would not get the surgery.  Dr. Fuller and Dr. Hearn removed the surgical recommendation that had come from EHCC from ARCHIE POE'S medical records.

15.

On June 21, 2016, ARCHIE POE arrived at David Wade Correctional Center. When he transferred from EHCC he had a duty status.  Dr. Hearn without consulting his records took his "no-Duty" status.  The "no-Duty" status came from EHCC.

16.

Dr. Pam Hearns put him to work, while he was walking on a cane with a failed hip replacement in sever pain.  Dr. Pam Hearns gave him no pain medications for the suffering.                17.

ARCHIE POE was forced to work on a failed hip for a year while under the medical care of Dr. Pam Hearns and Dr. Fuller.

18.

Dr. Fuller was asked multiple times by ARCHIE POE about his extreme and severe pain in his lower back many times.  Dr. Fuller said there was no problem and never took steps to diagnose the injury or review the EHCC medical records.  Dr. Fuller exhibited deliberate indifference.

19.

Finally, ARCHIE POE was transferred to Louisiana State Penitentiary, where he saw

an orthopedic specialist due to his extreme pain and difficulty waking.  He was placed in a wheelchair and scheduled for surgery.  X-rays indicated that the screws in the hip replacement had come completely out and were loose rubbing against the bone and the hip is setting well below where it should be .

20.

The orthopedic specialist told ARCHIE POE that his situation was extremely painful and it had to be fixed.  He was given a wheel chair and a "No-Duty" status.   Working on the hip caused the hip failure to become worse.

21.

Defendants were well aware that ARCHIE POE had a serious medical condition and that he needed to be have proper diagnostic testing, be on medication and was under the care of an orthopedic surgeon.

22.

Defendants were well aware of Plaintiff's continuous serious condition the entire time, but forced ARCHIE POE to walk and work on the hip when he was on a no weight-bearing restriction by an orthopedic surgeon and "No-Duty" status from EHCC..  The wheelchair, cane and crutches were denied..

23.

Defendants denied ARCHIE POE access to a hospital to see an orthopedic specialist and surgeon who had performed the surgery..

24.

Defendant was aware of the serious medical condition and did nothing and in fact made the pain and medical condition worse.

25.

The action of Defendant violated Louisiana law, La. DOC and David Wade Correctional Center medical policy and practice in place to protect and pertaining to

5

Medical Care available to inmates. Medical decisions may not be based on financial ability.

26.

Louisiana Administrative Code Title 22, Part III, § 2909, entitled *Medical and Health Care* provides as follows:

A. A licensed physician shall be responsible for the health care program and for the practice of medicine in the institution, and no restrictions shall be placed on the medical judgment of the physician.

B. All health care shall be provided in accordance with written policies and procedures developed by the physician in charge and endorsed by the administrator.

D. Treatment given by other than a licensed physician shall be made by trained personnel according to written, standing or direct orders of the physician in charge.

E. Inmates shall have continuous access to emergency health care by trained personnel and professional medical attention whenever required.

F. Inmates shall have access to routine health care by a physician within 48 hours after making such request.

L. Inmates shall be able to report illness or health complaints daily and all reports shall be recorded together with complaint disposition.

27.

These statutory rights were denied by the Defendants to ARCHIE POE.

28.

Defendant exhibited and acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights of an inmate confined to prison.

29.

The Constitution, statutes, rules and regulations enacted to protect inmates were disregarded.

30.

La. R.S. 15:829, which allows the Secretary of the Louisiana Department of Public Safety and Corrections to enact rules and regulations governing inmates and guards, provides that corporal punishment of inmates is forbidden. See also, lac 22:3309 (B) and see Department Regulation No. c-02-006 (6)(b)(c)(d).

> A. The secretary of the Department of Public safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof. A copy of such rules and regulations shall be furnished each inmate. **Corporal punishment is prohibited.**

31.

Intentionally causing an inmate to suffer who has a serious medical condition and no resort to medical assistance is per se unreasonable behavior.

32.

The following claims for relief are pled collectively and in the alternative.

33.

**INJURIES**

The Plaintiff suffered acute physical, mental and emotional injury for which he has sought or should seek and received treatment.  ARCHIE POE remains in a wheel chair and still is not able to walk normally and without pain, and at times he has no feeling in his hip. The pain makes it difficult for him to sleep and he has serious depression and anxiety.

34.

**FIRST CLAIM FOR RELIEF**

**SECTION 1983 VIOLATION OF CIVIL RIGHTS**

**DENIAL OF MEDICAL TREATMENT**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.

35.

Due process requires that persons imprisoned are entitled to adequate medical treatment.

36.

Defendant violated MR. ARCHIE POE's 8th Amendment right as an inmate to be free from cruel and unusual punishment pursuant to 42 USC § 1983.  By refusing medical treatment and/or to provide inadequate treatment and access to medical facilities, Defendant(s) exceeded constitutional limitations that arose under circumstances that constitute an usual and recurring situation with which a correctional officer must deal. Failure and lengthy delays in medical treatment demonstrates a deliberate indifference to a serious medical need on the part of persons charged with the well being of inmates toward the inmate and there is a direct causal link between the constitutional deprivation and the suffering of MR. ARCHIE POE.

37.

**COSTS AND ATTORNEY FEES**

Plaintiff seeks relief in the form of attorney's fees and cost pursuant to 42 USC § 1988 and punitive damages pursuant to 28 USC § 1983 and the 28 USC § 2671 et seq. or any other applicable statute.

38.

**SECOND CLAIM FOR RELIEF**

**NEGLIGENCE**

In the alternative, after the "no work and No weight Bearing" duty status, the DEFENDANTS knew or should have known that taking the duty status and forcing the Plaintiff to work on a failed hip replacement and failure to treat would cause serious personal injury particularly in view of this medical condition, Defendants denied him access to medical treatment.

39.

Plaintiff seeks relief under La. C.C. arts. 2315 of the Louisiana Civil Code, which injuries were occasioned by the intentional and/or negligent acts and/or omissions.

40.

**REQUEST FOR JURY TRIAL**

Plaintiff prays for a jury trial on all issues.

WHEREFORE, Plaintiff prays that the Defendants be cited to appear and answer and that after resolution of this matter that this Honorable Court enter Judgment in favor of the Plaintiff against the Defendant with legal interest from the date of demand as follows:

a. Severe bodily injuries;

b. Medical and pharmaceutical expenses and/or lien - past, present, and future;

c. Disability;

d. Pain and suffering-past present and future;

e. Mental anguish and emotional distress-past present and future;

f. Loss of earning capacity/lose of future wages;

g. Disfigurement;

h. Inconvenience;

i. Loss of ability to participate in normal activities;

j. All litigation expenses;

k. For attorneys fees and for costs as may be allowable by law;

l. For such other relief that the Court may deem just, equitable, or proper.

Respectfully submitted:

/s Donna Grodner
Donna U. Grodner (20840)
GRODNER LAW FIRM
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX 769-1997
dgrodner@grodnerlaw.com