# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **ARCHIE POE** | **CIVIL ACTION NO.: 17-913** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **BRUCE FULLER, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by Drs. Bruce Fuller ("Fuller") and Pamela Hearn ("Hearn") (collectively, "Defendants"). [Record Document 37]. For the reasons given below, the motion is **GRANTED IN PART** and **DENIED IN PART**. It is **DENIED** as to Plaintiff's 42 U.S.C. § 1983 claims against Hearn for the care she provided while he was incarcerated at Lincoln Parish Detention Center ("LPDC") and as to Plaintiff's negligence claims against both Defendants. The motion is **GRANTED** as to all other claims.

## I. Background

Plaintiff Archie Poe ("Poe") is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. [Record Documents 37-2 at 1 and 45-9 at 1]. He had a total hip replacement in 1998. [Record Document 37-3 at 5]. In 2014, after a fall in his home, Poe was seen by Dr. Michael Wayne Britt ("Britt") at University Health, Shreveport ("UH-S"); Britt scheduled Poe for a total hip replacement revision. [Record Documents 37-2 at 1 and 45-9 at 1]. On the scheduled day, Britt was unable to begin the surgery on time because he was having complications with the same surgery on another patient. [Record Document 45-2 at

1

10–11]. Scared of the complications, Poe elected to find another surgeon to perform the surgery. [*Id.* at 11].

In his treatment notes, Britt explained that Poe initially stated that he still wanted to have the surgery and that he only demanded to leave after Britt "emphasized [Poe's] need to be compliant and respectful of others." [Record Document 37-3 at 11]. According to Britt, Poe then became "abusive" and was presented with the options of cooperating or terminating the doctor-patient relationship. [*Id.*]. At that point, Poe stated that he did not want Britt to operate on him. [*Id.*]. In a follow-up letter, Britt wrote: "Your statement 'I do not want you to operate on me,' has indicated a lack of confidence in the care rendered by me. Therefore, the patient/physician relationship has been terminated and no longer exists." [Record Document 45-8 at 2]. Poe then located a surgeon in Lake Charles and was preparing to have surgery when he was incarcerated. [Record Document 45-2 at 11].

Poe was incarcerated in 2016, initially at LPDC. [Record Documents 37-2 at 2 and 45-9 at 2]. He arrived on crutches, but these were taken by prison officials. [Record Document 45-2 at 11]. When Poe met with Hearn, who was working at LPDC, she refused to give him his crutches back or to order the surgery. [*Id.* at 23]. According to Poe, Hearn told him that he should have had the surgery before coming to prison. [*Id.*]. Poe complained to her of hip pain and asked her to obtain his medical records from Lake Charles. [*Id.* at 24]. She refused, and Poe eventually obtained them himself and presented them to her. [*Id.* at 25]. Hearn testified that she recalled neither the crutches incident nor the Lake Charles records and denied telling him that he should have had the surgery before coming to prison. [Record Document 37-4 at 27–28].

Poe was then transferred to Elayn Hunt Correctional Center ("EHCC"), where he remained for three weeks. [Record Documents 37-2 at 2 and 45-9 at 2]. Upon his arrival at EHCC, Poe was given a cane, pain medication, and a no-duty status. [Record Documents 45-2 at 27 and 45-4 at 22]. He was quickly seen at the prison's orthopedic clinic, which scheduled him for a surgical evaluation at University Medical Center, New Orleans. [Record Document 45-3 at 2]. Three days before this appointment, Poe was transferred to David Wade Correctional Center ("DWCC"). [Record Documents 37-2 at 2, 45-3 at 2, and 45-9 at 2].

Poe arrived at DWCC on June 20, 2016. [Record Documents 37-2 at 2 and 45-9 at 2]. Nine days later, he was seen by Hearn, a DWCC physician. [Record Documents 37-2 at 2 and 45-9 at 2]. Although she denies his allegations, Poe claims that Hearn told him that he would not have surgery on his hip while incarcerated and that she did not know who at EHCC would have approved one. [Record Documents 37-4 at 28–29 and 45-2 at 28–29]. At this appointment, Hearn noted that Poe had been evaluated by the orthopedic clinic at EHCC, which recommended "further orthopedic intervention." [Record Document 37-3 at 1]. She directed that he be referred for an orthopedic evaluation at University Health-Monroe ("UH-M"), ordered a duty status that limited walking to 1/10 of a mile, and allowed him to use a cane. [*Id.* at 1, 17].[1]

On July 11, 2016, Poe requested to be able to sit to bathe as he was having trouble standing in the shower. [*Id.* at 2]. DWCC approved use of a walker while showering. [*Id.*]. This

---

[1] It is unclear from the record whether this outside evaluation took place at University Health-Shreveport or University-Health Monroe. Some records indicate that the referral was to UH-S, [Record Document 37-3 at 1], while Fuller's deposition suggests that it was at UH-M, [Record Document 37-5 at 39]. For purposes of this opinion, the Court will assume without deciding that the evaluation took place at UH-M.

3

form was initialed "BF" on "7/12," [*id.*], and so the Court infers that Fuller became aware by July 12, 2016 that Poe was having problems related to his prior hip replacement and that he had a referral to an orthopedic specialist. On August 16, 2016, Poe met with Fuller regarding complaints related to Poe's blood pressure medication. [Record Documents 37-2 at 3, 37-3 at 3, and 45-9 at 3].

Ten days later, Poe was evaluated by the orthopedics department at UH-M. [Record Document 37-3 at 4–9]. The examining physician assistant, working under Dr. Randolph Taylor, [*id.* at 4], noted in the medical record:

> Pt will have to live with his condition at this time. Dr. Britt, which patient stated he did not want to operate on him[,] is the Orthopedic total joint physician that Dr. Taylor refers total joint revisions or more complex joint replacements to. Pt is also at increased risk for complications due to his co morbidities (hx, HTN, smoking, Atrial tachycardia, and morbid obesity).
> Pt may choose the orthopedic physician of his choice to follow up with once he is released from prison for his right hip condition and his knee condition.

[*Id.* at 8]. UH-M ordered some adjustments to Poe's medication, and DWCC followed these orders in part. [*Id.* at 12]. The UH-M records also state that there had been no change in the condition of Poe's hip since he was last seen at UH-S in 2014 and that "there is no hardware failure or loosening." [*Id.* at 10].

Fuller saw Poe at least twice more. [Record Documents 37-2 at 4 and 45-9 at 4]. Each time Poe complained of hip pain, and Fuller reviewed the UH-M report. [Record Documents 37-2 at 4 and 45-9 at 4]. Poe claims that Fuller told him that he could wait until he was released to have surgery. [Record Document 45-2 at 29].

During his remaining time at DWCC, Poe continued to be on a restricted duty status where he would work within the prison compound; his particular job involved wiping poles.

4

[Record Documents 37-3 at 17–23 and 45-2 at 30, 39–40]. Hearn and Fuller issued or approved various adjustments to this duty status such as allowing Poe to elevate his feet as needed and ordering that he not be made to kneel or to stand for prolonged periods. [Record Document 37-3 at 17–23]. However, Poe was always required to work, and he contends that even this light work was very painful. [Record Documents 37-3 at 17–23 and 45-2 at 30, 39–40]. Poe also claims that he was never given pain medication despite repeated complaints that he was in pain. [Record Documents 45-2 at 29–30 and 45-3 at 7–8, 19, 21]. However, he was prescribed Mobic and Dolobid. [Record Documents 37-3 at 12, 37-4 at 30, 37-5 at 69].

On March 27, 2017, Poe was transferred to the Louisiana State Penitentiary ("LSP"); the reason for transfer was noted as "ADMN - MEDICAL." [Record Document 37-7 at 1]. It is unclear from the record if either Hearn or Fuller was involved in the order to transfer Poe. Once at LSP, he was placed in a wheelchair and given a no-duty status. [Record Document 45-2 at 33–34]. After a delay related to his diabetes, he received the hip surgery in November 2017. [Record Documents 45-2 at 33, 35 and 45-3 at 26, 35].

Poe claims that Defendants' treatment of him violated his Eighth Amendment right to be free from cruel and unusual punishment. [Record Document 1 at 7–8]. He raises an additional state-law claim for negligence. [*Id.* at 8]. Both Defendants are sued in their individual capacities. [*Id.* at 2].

## II. Law and Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous"

---

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

6

that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be entitled to qualified immunity, an official who has violated a clearly established constitutional or statutory right must have done so through "conduct that was objectively reasonable under the law at the time of the incident." *Michalik v. Herman*, 422 F.3d 252, 257–58 (5th Cir. 2005). A clearly established right is one whose outline is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Nevertheless, finding a right clearly established "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). Thus, even in "novel factual situations" a right may be clearly established if precedent gives defendants a "fair warning that

their alleged treatment . . . was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). A defendant's conduct is objectively unreasonable only if "*all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated" the plaintiff's rights. *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001). A court may evaluate the reasonableness of an official's conduct in light of clearly established law and the existence of a statutory or constitutional violation in either order. *Pearson*, 555 U.S. at 236.

### C. Eighth Amendment Standards for Medical Treatment

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII; *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976) ("[W]e have held repugnant to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society." (internal quotation marks omitted)). Although the amendment "does not, by its precise words, mandate a certain level of medical care for prisoners[,] the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive adequate . . . medical care." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted). To establish a violation of his Eighth Amendment rights, a prisoner must show that officials or medical staff acted with "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Thus, a successful Eighth Amendment claim requires (1) that the plaintiff have had a serious medical need that exposed him to a substantial risk of serious harm, *Lawson v. Dall. Cty.*, 286 F.3d 257, 262 (5th Cir. 2002); and (2) that a prison official was "both aware

8

of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference," *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Moreover, because deliberate indifference requires conscious disregard, mere negligence or medical malpractice does not violate the Eighth Amendment. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

If prison officials or doctors act with deliberate indifference in delaying treatment, additional injuries caused by the delay violate the Eighth Amendment if they rise to the level of "substantial harm." *Easter*, 467 F.3d at 463. Likewise, "pain suffered during a delay in treatment" for a serious medical need is actionable under the Eighth Amendment. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017). Nevertheless, a prisoner's disagreement with the selection of treatments offered does not establish an Eighth Amendment violation as long as those treatments are medically appropriate. *Easter*, 467 F.3d at 464; *see Gobert*, 463 F.3d at 349 n.32 ("Considering and failing to follow the recommendations of another treating physician does not amount to deliberate indifference."). To establish that they did not act with deliberate indifference, prison officials or medical staff may introduce evidence of "[m]edical records of sick calls, examinations, diagnoses, and medications." *Gobert*, 463 F.3d at 346 n.24.

### D. <u>Application</u>

"[N]on-life-threatening injuries are a serious medical need when the injuries induce[] severe pain." *Thomas v. Carter*, 593 F. App'x 338, 342 (5th Cir 2014) (per curiam) (citing *Gobert*, 463 F.3d at 349; *Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999)). Given that Poe reported constant pain, required a cane to ambulate, and had been scheduled for surgery

before being incarcerated and received it at LSP, the Court concludes that his hip condition constituted a serious medical need. *See id.* (citing *Gobert*, 463 F.3d at 345 n.12) (having "no difficulty holding" that a condition constitutes a serious medical need when a patient required pain medication, rated his pain as 9 or 10 on a scale of 10, and warranted surgery).

  **1.**   **Care at LPDC**

Poe claims that Dr. Hearn was deliberately indifferent by failing to schedule him for a surgery while he was at LPDC and for failing to order that his crutches (which he was using on arrival) be returned. [Record Document 1 at 3]. He was at LPDC for less than a month. [Record Documents 37-7 at 5 and 45-2 at 23]. After his first meeting with Hearn where she refused to obtain the medical records from Lake Charles, Poe obtained them. [Record Document 45-2 at 24–25]. Although she disputes Poe's version of events, [Record Document 45-4 at 27–28], on summary judgment the Court must make all inferences in Poe's favor, and so must infer that he did, in fact, present her with records showing that he had been scheduled for surgery before being incarcerated. One week later, he was transferred to EHCC, where he was scheduled for an outside surgical evaluation. [Record Documents 37-2 at 2, 45-3 at 2, and 45-9 at 2].

The issue is whether Hearn was deliberately indifferent by failing to refer Poe to a specialist while he was at LPDC. An intentional delay in treatment is actionable under the Eighth Amendment. *Easter*, 467 F.3d at 463. Hearn has not explained why she did not schedule Poe for an outside evaluation while he was at LPDC, but then did so weeks later when he arrived at DWCC. She has denied refusing to order the medical records related to Poe's scheduled surgery in Lake Charles or that she told him that he should have had the surgery

before being incarcerated. [Record Document 37-4 at 9–11, 28]. Because she denies having done these things, this Court must again make inferences in Poe's favor and assume that she acted as he has testified. If she did state that he was not going to have a surgery and did refuse without justification to obtain records related to a medical need that she recognized mere weeks later, a jury could find that she had acted with deliberate indifference.

The crutches were taken by prison staff, not by Hearn. [Record Document 45-2 at 11, 23]. Therefore, she can only be liable if failing to order that he be allowed to use them rises to the level of deliberate indifference. The record of this case does not contain the medical records from LPDC, but it is clear that Hearn did not order that the crutches be returned to him. In the absence of any explanation for not allowing Poe to have crutches or evidence of any substitute or alternative care Hearn provided, Hearn has failed to carry her initial burden to establish that there is no dispute of genuine material fact regarding whether she responded to Poe with deliberate indifference while he was at LPDC.

This Court also finds that Hearn is not entitled to qualified immunity for care she provided at LPDC. It was clearly established by 2016 that while a prison official may offer alternate or substitute treatments, a prison official cannot refuse to provide any treatment for a serious medical need. *Estelle*, 429 U.S. at 104; *Easter*, 467 F.3d at 464. As Hearn has offered no explanation for her apparently contradictory medical decisions at LPDC and DWCC, this Court cannot find that she acted reasonably in light of clearly established law. Similarly, without some positive evidence of care she did provide in lieu of crutches or why no such care was medically indicated, the Court cannot find her conduct to be reasonable. Therefore, Poe's

11

claim that Hearn was deliberately indifferent to his medical needs while he was at LPDC survives summary judgment.

### 2. Care at DWCC

#### a. Pain Medication

Poe claims that Hearn and Fuller both refused to provide him with pain medication at DWCC. [Record Document 1 at 4]. Although the Court infers, as it must, that Poe was in pain while was under Defendants' care, the Court concludes that no Eighth Amendment violation occurred because he was provided with some treatment for his pain. *See Gobert*, 463 F.3d at 346 n.24. An "alleged failure to . . . prescribe effective treatments and make perfect decisions as to the management of [an inmate's] conditions and pain do not establish . . . deliberate indifference." *Walcott v. Terrebonne Par. Jail Med. Dep't*, 728 F. App'x 361, 362 (5th Cir. 2018) (per curiam) (citing *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Mendoza*, 920 F.2d at 195). Poe's medical records show that he was prescribed anti-inflammatory drugs Mobic and Dolobid, which also have some analgesic properties. [Record Documents 37-3 at 12, 37-4 at 30, and 37-5 at 69]. In fact, Dr. Fuller approved the switch away from Mobic when this was recommended by the UH-M clinic. [Record Document 37-3 at 12].[3] Moreover, Poe was allowed to use a cane and given a limited duty status to which progressive modifications were made, indicating that neither Hearn nor Fuller were deliberately indifferent to the pain that Poe reported. [Record Documents 37-3 at 17–23, 37-4 at 29–30, and 45-2 at 30–32].

---

[3] Although Fuller did not prescribe the same drug recommended by UH-M, [Record Documents 37-3 at 8, 12], "[c]onsidering and failing to follow the recommendations of another treating physician does not amount to deliberate indifference," *Gobert*, 463 F.3d at 349 n.32.

### b. Duty Status

Poe claims that by refusing to assign him a no-duty status, Hearn and Fuller were deliberately indifferent to his serious medical needs. [Record Document 1 at 4]. While neither EHCC nor LSP required Poe to work, "[d]isagreement with [one's] medical classification does not state a constitutional claim." *Thomas*, 593 F. App'x at 343 (quoting *Winston v. Stacks*, 243 F. App'x 805, 807 (5th Cir. 2007) (per curiam)). Moreover, medical staff at DWCC reevaluated his classification multiple times and made modifications to further limit his activity. [Record Document 37-3 at 17–23]. Again, this Court must infer that Poe continued to be in pain while he was working, but the record of review of his duty status prevents any conclusion that his light-work duty status was the product of deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

### c. Failure to Order Surgery

#### i. Hearn

Poe claims that Hearn was deliberately indifferent because she canceled the surgery that he was scheduled to have at EHCC. [Record Document 1 at 4]. However, the EHCC records indicate that a surgical <u>evaluation</u> had been scheduled, not that a <u>surgery</u> had been scheduled. [Record Document 45-3 at 2]. After Poe arrived at DWCC, Hearn referred him for a consultation with the UH-M orthopedic clinic. [Record Document 37-3 at 1]. Although the Court infers that Hearn did make disparaging comments about the unlikelihood of Poe receiving the surgery while incarcerated, there is no evidence that Hearn continued to be involved in Poe's treatment after the initial referral to the UH-M clinic. Because referral was

an appropriate response to Poe's hip pain, Hearn is entitled to summary judgment on this issue.

### ii.  Fuller

After Poe was seen at UH-M, Fuller saw him multiple times, but did not refer him to see another surgeon. [Record Documents 37-2 at 4, 37-3 at 13–14, and 45-9 at 4]. Poe alleges that failing to locate a surgeon other than Britt constituted deliberate indifference. [Record Document 1 at 4]. A prisoner has a constitutional right to adequate medical care, but not to a physician of his choice. *See Parker v. Smith*, 22 F.3d 1094 (5th Cir. 1994) (unpublished table decision); *Allen v. Gunn*, No. 1:08CV393-RHW, 2009 WL 3561541, at *1 (S.D. Miss. Oct. 30, 2009) ("Plaintiff is not constitutionally entitled to a physician of his choice. He is entitled only to constitutionally adequate treatment."). When an alleged denial of medical care results from an inmate's refusal to accept the care offered, there is no Eighth Amendment violation. *Allen*, 2009 WL 3561541, at *1.

While treating Poe, Fuller learned from the medical record that Poe had refused to allow Britt to perform the operation. [Record Documents 37-3 at 8 and 45-5 at 11, 13]. Poe had thus been presented with an opportunity to have surgery but declined to avail himself of it. Poe has pointed this Court to no authority for the proposition that failing to shop around to find a second surgeon after an inmate refuses care from a first is constitutionally required.[4]

---

[4] The record also contains Britt's letter in which he terminated the doctor-patient relationship. [Record Document 45-8 at 2]. Had Fuller been aware of this letter, it is arguable that failing to locate a surgeon who would treat Poe would constitute deliberate indifference. However, Fuller testified that he only became aware of Britt's refusal to continue treating Poe shortly before the deposition. [Record Document 45-5 at 49]. In fact, Poe even represents that it was Poe who had refused treatment from Britt: "Thus, Dr. Fuller and Dr. Hearn were seizing upon the fact that prior to being incarcerated Archie Poe had previously rejected the "First

14

Moreover, the UH-M records state that Poe "will have to live with his condition at this time." [Record Document 37-3 at 8]. Thus, Fuller had a specialist's opinion that Poe's condition was not life-threatening or likely to worsen. Fuller also continued to treat Poe, providing new medication and restricting him to light duty. [*Id.* at 12–14, 19]. Although Poe claims that Fuller refused to allow him to have the surgery that EHCC determined was necessary, EHCC had only scheduled an evaluation. [Record Documents 1 at 4 and 45-3 at 2]. While it appears that Poe would have benefited from having the surgery while at DWCC, this Court cannot conclude that Fuller's conduct rose to the level of deliberate indifference given the UH-M opinion and Fuller's subsequent treatment of Poe.

### D. Negligence

Poe also alleges that Fuller and Hearn's treatment of him was negligent in violation of Article 2315 of the Louisiana Civil Code. [Record Document 1 at 8]. Because Defendants' motion does not address the negligence claim, summary judgment is **DENIED** as to this claim.

### IV. Conclusion

The motion for summary judgment [Record Document 37] is **GRANTED IN PART** and **DENIED IN PART**. Because the medical care provided by Hearn and Fuller at DWCC met constitutional muster, summary judgment is **GRANTED** as to all § 1983 claims against Fuller and all § 1983 claims against Hearn for care at DWCC. Summary judgment is **DENIED**

---

Doctor", who was a colleague of Dr. Taylor, as their reason to deny Archie Poe surgery while at DWCC/DOC." [Record Document 45 at 8–9].

for the care Hearn provided at LPDC. Because Defendants did not address Poe's negligence claim, summary judgment is also **DENIED** as to that claim.

The claims on which summary judgment has been granted are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 28th day of March, 2019.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE