# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| **ARCHIE POE** | **CIVIL ACTION NO.: 17-913** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **BRUCE FULLER, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment on the medical malpractice claim urged by Plaintiff Archie Poe ("Poe") against Drs. Bruce Fuller ("Fuller") and Pamela Hearn ("Hearn") (collectively, "Defendants") regarding the care that they provided him at David Wade Correctional Center ("DWCC"). [Record Document 78]. Because it lacks subject-matter jurisdiction, this Court is unable to rule on the motion's merits. Poe's medical malpractice claim seeks a money judgment which, under the applicable statute, must be rendered against the State of Louisiana rather than against Defendants. La. Stat. Ann. § 40:1237.1(A)(8); *Detiller v. Kenner Reg'l Med. Ctr.*, 2003-3259, p. 16 (La. 7/6/04); 877 So. 2d 100, 111. This requirement makes the State of Louisiana a necessary party to this proceeding. Joinder of the State on a claim for money damages would violate the Eleventh Amendment, and so this Court cannot join the State. Because Poe has no remedy in the State's absence, the claim against Defendants for their role at DWCC is **DISMISSED WITHOUT PREJUDICE**. Defendants' motion for summary judgment [Record Document 78] and Poe's motion to strike [Record Document 82] are **DENIED AS MOOT**. Hearn's motion for summary judgment on claims related to

her work at the Lincoln Parish Detention Center ("LPDC") [Record Document 75] will be addressed in a separate ruling.

## I. Background

The Court has fully discussed the factual background of this case in its prior ruling, [Record Document 57 at 1–5], so will recap only the most salient facts here. Poe needed a total hip replacement revision. [*Id.* at 1]. He was incarcerated before he could have the surgery. [*Id.* at 2]. He was initially housed at LPDC, where he was treated by Hearn. [*Id.*]. He was later transferred to Elayn Hunt Correctional Center, to DWCC, and ultimately to the Louisiana State Penitentiary ("LSP"). [*Id.* at 3, 5]. Hearn and Fuller both provided medical care to Poe while he was at DWCC, but he did not have the surgery until after his transfer to LSP. [*Id.* at 3–5].

Dissatisfied with his care at DWCC, Poe filed an Administrative Remedy Procedure ("ARP") request. [Record Document 37-6 at 4, 7].[1] Following completion of the ARP process, Poe filed the instant suit, alleging that Defendants' treatment of him constituted cruel and unusual punishment in violation of the Eighth Amendment and negligence under Article 2315 of the Louisiana Civil Code. [Record Document 1 at 7–9]. After appropriate discovery, this Court granted summary judgment on the Eighth Amendment claim arising from Defendants' treatment of Poe at DWCC. [Record Document 57]. Because the factual record was insufficient to support summary judgment as to the care Hearn provided at LPDC, the Court denied the motion as to that claim. [*Id.* at 10–12]. The Court also declined to grant summary

---

[1] Defendants confusingly describe this ARP as two separate ARPs. [Record Document 78-5 at 3]. Examining the two documents indicates that they are the State's responses to the first and second steps of the same ARP (DWCC-2016-1077). [Record Document 37-6 at 4, 7].

judgment on Poe's negligence claims because Defendants' motion did not address them. [*Id.* at 15].

Defendants have filed a second summary judgment motion in which they argue that they were not negligent when treating Poe at DWCC. [Record Document 78]. They support their motion by pointing to evidence that they did not deliberately refuse to provide Poe with some treatment while he was at DWCC. [Record Document 78-1 at 8–9]. They also challenge the admissibility of the testimony of Poe's medical experts. [*Id.* at 9–11]. Poe's opposition emphasizes his belief that his claims sound in general negligence rather than medical malpractice. [Record Document 83 at 12–15]. In support, he points to opinions from two medical experts that Defendants' treatment of him exacerbated his pain and worsened his injuries. [*Id.* at 12–13]. He also relates the allegedly deficient medical care Defendants provided to seven other DWCC inmates. [*Id.* at 16–18].[2]

## II.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate

---

[2] This Court takes no position on the classification or legal analysis appropriate to Defendants' conduct toward these other inmates. Any claims these inmates may have are not before this Court.

[3] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will

be deemed admitted, for purposes of the motion, unless controverted as required by this rule."

*Id.*

## III.    Law and Analysis

Before evaluating the merits of Defendants' motion, this Court must assure itself of its jurisdiction over the claim at issue. *See Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997) (citing *Trizec Props., Inc. v. U.S. Mineral Prods. Co.*, 974 F.2d 602 (5th Cir. 1992); *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170 (5th Cir. 1990); *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100 (5th Cir. 1981)) ("We repeatedly have instructed that before proceeding with a case, federal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if necessary.").

### A.    The Classification of Poe's Negligence Claim

When a claim arises under state law, federal courts must apply that state's substantive law as interpreted by that state's courts. *Keen v. Miller Env't'l Grp., Inc.*, 702 F.3d 239, 243 (5th Cir. 2012) (citing *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). In Louisiana, medical malpractice claims are controlled by two statutory schemes: the Medical Malpractice Act ("MMA") and the Malpractice Liability for State Services Act ("MLSSA"). La. Stat. Ann. §§ 40:1231.1–.10, 40:1237.1–.4; *see Spradlin v. Acadia-St. Landry Med. Found.*, 1998-1977, p. 6 n.5 (La. 2/29/00); 758 So. 2d 116, 120 n.5. The MLSSA controls malpractice claims against "state health care providers," while the MMA applies to all other health care providers,[4] *Vanderhoff v. Beary*, 2003-0912, p. 3 (La. App. 4 Cir. 8/20/03); 853 So. 2d 752, 754 (citing La.

---

[4] To be covered by the MMA, health care providers must have "qualified" by obtaining malpractice insurance (or self-insuring) and paying an annual surcharge to the Patient's Compensation Fund. La. Stat. Ann. §§ 40:1231.1(D), 1231.2(A), 1231.4(2)(a).

Stat. Ann. § 40:1299.39(A) (recodified at La. Stat. Ann. § 40:1237.1(A)); La. Stat. Ann. § 40:1299.41(A) (recodified at La. Stat. Ann. § 40:1231.1(A)). Under the MLSSA, malpractice claims against state health care providers must pass through an administrative review process before suit can be brought (unless the State waives that procedure), and recovery is limited to $500,000 exclusive of costs of future medical care. La. Stat. Ann. § 40:1237.1(E)–(F). "[B]ecause the MLSSA limits the liability of certain health care providers in derogation of the general rights of tort victims, any ambiguities in the Act should be strictly construed against coverage." *Ruiz v. Oniate*, 97-2412, p. 4 (La. 6/19/98); 713 So. 2d 442, 444 (citing *Kelty v. Brumfield*, 93-1142, p. 9 (La. 2/25/94); 633 So. 2d 1210, 1216; *Hutchinson v. Patel*, 93-2156, p. 5 (La. 5/23/94); 637 So. 2d 415, 420), *called into question on other grounds by Batson v. S. La. Med. Ctr.*, 2002-2381 (La. App. 1 Cir. 6/27/03); 858 So. 2d 653.

The MLSSA applies to medical malpractice only. La. Stat. Ann. § 40:1237.1(D)(1); *see Herrin v. East Baton Rouge Sheriff's Office*, No. CV 15-00082-SDD-EWD, 2016 WL 4408999, at *6 (M.D. La. July 6, 2016), *report and recommendation adopted*, 2016 WL 4432698 (M.D. La. Aug. 17, 2016). The statute defines malpractice as "the failure to exercise the reasonable standard of care . . . in the provision of health care, when such failure proximately causes injury to a patient . . . ." La. Stat. Ann. § 40:1237.1(A)(4). In *Coleman v. Deno*, the Louisiana Supreme Court adopted a six-factor test for determining whether a claim falls under the MMA:

> [1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,
> [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
> [3] whether the pertinent act or omission involved assessment of the patient's condition.
> . . . .

[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

[5] whether the injury would have occurred if the patient had not sought treatment, and

[6] whether the tort alleged was intentional.

*Coleman v. Deno*, 2001-1517, pp. 14–15 (La. 1/25/02); 813 So. 2d 303, 315–16 (internal quotation marks omitted) (first quoting *Sewell v. Doctors Hosp.*, 600 So. 2d 577, 579 n.3 (La. 1992); then quoting Holly P. Rockwell, Annotation, *What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice*, 89 A.L.R.4th 887, 898 (1991)). Louisiana courts apply these factors by analogy to MLSSA cases. *See, e.g.*, *Crum v. State*, 41,059, p. 8 (La. App. 2 Cir. 5/17/06); 931 So. 2d 400, 404.

Poe argues that his claim sounds in general negligence rather than medical malpractice. [Record Document 83 at 12–15]. However, he fails to even address the factors identified by the Louisiana Supreme Court. Instead he points to a set of mostly irrelevant caselaw. In *Bedingfield ex rel. Bedingfield v. Deen*, 487 F. App'x 219 (5th Cir. 2012), *Robinson v. Stalder*, 98-0558 (La. App. 1 Cir. 4/1/99); 734 So. 2d 810, and the relevant portion of *Authement v. Par. of Terrebonne*, No. CIV.A. 09-4618, 2010 WL 5093866, at *10–12 (E.D. La. Dec. 8, 2010), the defendants were not health care providers but rather were prison officials. The negligence of a prison official who is not a health care provider is not an issue in this case as Poe has only sued his doctors. Admittedly, one of the defendants in *Jackson v. Bailey* was a nurse and in that case the court did apply the duty-risk analysis appropriate for general negligence claims in Louisiana. *Jackson v. Bailey*, No. CIVA 06-1083, 2008 WL 652136, at *3 (W.D. La. Mar. 11, 2008), <u>aff'd</u>, 305 F. App'x 246 (5th Cir. 2008). Nevertheless, it is not clear that the nurse in

*Jackson* asked the court to treat the claim as one for medical malpractice, and when dismissing the negligence claim, the court only considered the duty owed by "prison authorities" and did not separately analyze the nurse's duty as a health care provider. *Id.* Poe has not sued any prison authority; he has sued two physicians regarding their medical decisions. Moreover, the MLSSA has specific provisions for the "medical malpractice claims of prisoners related to health care rendered in a correctional facility," La. Stat. Ann. § 40:1237.1(E)(1), thereby indicating that Louisiana law recognizes claims against prison doctors as medical malpractice claims. As Poe has failed to apply the correct factors and failed to point this Court towards authority convincingly demonstrating that his claim regarding Defendants' allegedly inappropriate care does not sound in medical malpractice, this Court concludes that his claim is a medical malpractice claim.

## B.    Defendants' Status as State Health Care Providers

Because Poe's claim is one for medical malpractice, the next question is whether Defendants are the sort of health care providers that the MLSSA protects. The MLSSA covers physicians and other medical personnel who provide health care services on behalf of the State of Louisiana. *Batson*, 2002-2381, p. 5; 858 So. 2d at 657 (citing La. Stat. Ann. §§ 40:1299.39–.39.3 (recodified at La. Stat. Ann. §§ 40:1237.1–.4); *Ruiz*, 97-2412, pp. 4–5; 713 So. 2d at 444–45). Under the version of the MLSSA in effect at the time that Poe was housed at DWCC,[5] "state health care providers" included:

---

[5] Amendments to the definition of a "state health care provider" are substantive and as such the statutory scheme that must be applied is the one in effect when the alleged malpractice occurred. *Ruiz*, 97-2412, p. 2 n.1; 713 So. 2d at 443 n.1. Poe was housed at DWCC from June 20, 2016 to March 27, 2017. [Record Document 57 at 3, 5].

> [1] [T]he state or any of its departments . . . which may provide any kind of health care whatsoever, and the officers, officials, and employees thereof when acting within the course and scope of their duties in providing health care in connection with such state entity; [or]
>
> [2] A person acting in a professional capacity in providing health care services, by or on behalf of the state, including but not limited to a physician . . . who is either:
>
>> (aa) Acting within the course and scope of his employment pursuant to a contract with the state, which contract specially names that health care provider and designates him to render such health care services, pursuant to a staff appointment to a state hospital or other state health care facility, or pursuant to an assignment to render such health care services for or on behalf of the state, without regard to where the services are performed, whether or not he is paid for such services.
>>
>> (bb) Performing voluntary professional or telemedicine services in a health care facility or institution for or on behalf of the state.

Act of July 3, 2008, No. 717, 2008 La. Acts (amending La. Stat. Ann. § 40:1299.39(A)(1)(a)(ii) (recodified at La. Stat. Ann. § 40:1237.1(A)(9)(a)(ii)); Act of July 18, 1988, No. 786, 1988 La. Acts (amending La. Stat. Ann. § 40:1299.39(A)(1)(a) (recodified at La. Stat. Ann. § 40:1237.1(A)(9)(a)(i)).

Interpreting a substantially equivalent version of this definition in *Ruiz v. Oniate*, the Louisiana Supreme Court held that employees of a state hospital were covered by the MLSSA even though there was no evidence that they had been named in a contract with the State. 97-2412, pp. 8–11; 713 So. 2d at 447–49 (interpreting La. Stat. Ann. § 40:1299.39(A)(1) (recodified as amended at La. Stat. Ann. § 40:1237.1(A)(9))). In doing so, the court relied in part on statutory language that has since been removed. *Id.* at pp. 10–11; 713 So. 2d at 448–49. In the version of the statute under consideration in *Ruiz*, the contract with the State had to name either the health care provider "or his employer." *Id.* at p. 8; 713 So. 2d at 447 (quoting La. Stat. Ann. § 40:1299.39(A)(1) (recodified as amended at La. Stat. Ann. § 40:1237.1(A)(9))). On that basis, the court concluded that the Legislature intended to extend the MLSSA's

protections to "medical professionals who personally or through their private employers had contracted with the state as independent contractors to provide medical services on behalf of the state." *Id.* at p. 10; 713 So. 2d at 448. At the same time, the court concluded that the legislative decision to extend MLSSA protections to employees of state contractors did not evince any intent to remove those protections from "noncontract employees," who, the court reasoned, were protected by virtue of that employment relationship. *Id.*

Subsequently, the Legislature amended the MLSSA to remove the "or his employer" phrase. *See Batson*, 2002-2381, p. 10; 858 So. 2d at 660 (citing Act of July 18, 1988, No. 786, 1988 La. Acts). In light of that amendment, the Louisiana First Circuit Court of Appeal concluded that *Ruiz*'s holding should now be limited to "direct employees" of the State and to medical professionals who contract directly with the State. *Id.* at pp. 8–10; 858 So. 2d at 658–60. Applying its conclusion, the First Circuit found that the MLSSA did not protect physical therapists working at a state facility under a chain of subcontracts. *Id.* at pp. 7, 12; 858 So. 2d at 658, 660. In light of this decision, it appears that the MLSSA no longer covers contract physicians working for private employers who in turn contract with the State, but the change in statutory language supporting this decision does not alter the relevant rule of law for present purposes: direct employees of the State, regardless of whether they are named in specific contracts, are covered by the MLSSA when they provide medical services as part of their employment. *See Ruiz*, 97-2412, p. 9; 713 So. 2d at 447–48.

Here, the parties do not dispute that Defendants are employed by the Louisiana Department of Public Safety and Corrections ("LDPSC"), which operates DWCC, in order to provide medical treatment. [Record Documents 37-2 at 1 and 45-9 at 1]. They are direct

employees and so are "state health care providers" as to the care they provided Poe at DWCC. Because Poe's negligence claim sounds in medical malpractice and because Defendants are "state health care providers," the MLSSA governs Poe's claim arising from his treatment at DWCC.

### C.  Effect of the Application of the MLSSA

Having determined that the MLSSA applies to Poe's negligence claim against Defendants arising from their treatment of him at DWCC, this Court must now examine the effect of that determination. In *Detillier v. Kenner Regional Medical Center*, the Louisiana Supreme Court held that "in a medical malpractice suit brought against the state and a qualified state health care provider, if the court finds that the state health care provider committed medical malpractice, judgment must be entered for the successful claimant against the state alone." 2003-3259, p. 16; 877 So. 2d at 111. The court reached this conclusion by looking to MLSSA language defining the "[r]ight to recover losses due to malpractice" as

> the <u>substantive right in favor of a patient</u> or his representative <u>to receive</u>, subject to the fiscal legislative discretion of appropriation, <u>some measure of compensation</u> in money or services or both <u>from the state</u> as and to the extent allowed by this Section, toward repairing any injury or losses proximately caused to him by an act of malpractice committed by a state health care provider as defined in this Section.

*Id.* at p. 13; 877 So. 2d at 109 (quoting La. Stat. Ann. § 40:1299.39 (recodified as amended at La. Stat. Ann. § 40:1237.1(a)(8))).[6]

---

[6] With the exception of an added comma, which has no effect on the meaning of the statute, this language remains unchanged in the current version of the statute. La. Stat. Ann. § 40:1237.1(a)(8).

Although the precise holding of *Detillier* was that a plaintiff could join individual health care providers as defendants to a claim against the State, 2003-3259, pp. 13–14; 877 So. 2d at 109, the Louisiana Fourth Circuit, applying *Detillier*, clarified that a state entity "must be considered an indispensable party" to an MLSSA suit, *Gettys v. Wong*, 2013-1138, p. 7 (La. App. 4 Cir. 5/7/14); 145 So. 3d 460, 464. Here, Poe named Hearn and Fuller as defendants. [Record Document 1 at 2]. The Fourth Circuit's ruling suggests that the State of Louisiana must also be named in Poe's suit. The potential joinder of a state or a state agency raises the specter of Eleventh Amendment immunity[7] and thus of this Court's subject-matter jurisdiction.[8]

## D. **This Court's Authority to Consider Joinder Issues *Sua Sponte***

Complicating the question of subject-matter jurisdiction is this matter's procedural posture. Failure to a join a required party under Rule 19 of the Federal Rules of Civil Procedure

---

[7] Because the LDPSC is an arm of the State of Louisiana, it shares the State's Eleventh Amendment immunity. *See Champagne v. Jefferson Par. Sheriff's Office*, 188 F.3d 312, 313–14 (5th Cir. 1999) (per curiam).

[8] The Fifth Circuit has not addressed federal courts' subject-matter jurisdiction over MLSSA claims, and federal district courts in Louisiana have typically dismissed such claims as premature because a medical review panel was not convened. *See, e.g.*, *Hays v. Smith*, No. CV 15-2134, 2016 WL 8679233, at *10 (W.D. La. Sept. 23, 2016); *Herrin*, 2016 WL 4408999, at *6; *Ford v. Cain*, No. 15-136-SDD-EWD, 2016 WL 447617, at *2 (M.D. La. Feb. 4, 2016); *Thurman v. La. Dep't of Health & Hosps.*, No. 2:12-CV-2426, 2013 WL 3146923, at *3 (W.D. La. June 14, 2013). One case found diversity jurisdiction lacking for an MLSSA claim against individual physicians because, as the state could not be subjected to money damages in federal court, the amount in controversy was zero. *Tex. All. of Energy Producers Workers Comp. Self-Insured Grp. Tr. v. La. State Univ. Health Scis. Ctr.-Shreveport*, No. CIV.A. 10-1216, 2011 WL 4079228, at *3 (W.D. La. Sept. 13, 2011). Another division of this Court noted that it had jurisdiction over MLSSA claims but avoided detailed analysis by remanding the case to state court. *Moore v. Louisiana*, No. CIV.A. 14-398, 2014 WL 6885929, at *3 (W.D. La. Dec. 4, 2014). Here, no party appears to dispute that Poe exhausted his administrative remedies with respect to his claims related to Defendants' care at DWCC.

is properly raised in a pleading, in a motion to dismiss, in a motion for judgment on the pleadings, or at trial. Fed. R. Civ. P. 12(b)(7), 12(h)(2). Although Defendants raised the defense of Eleventh Amendment immunity in their answer, asserting that the amendment "also bars this Court from hearing [P]laintiff's State law claims," [Record Document 11 at 2], they have not raised the issue of failure to join a party under Rule 19.

"A court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) (citing *Minnesota v. N. Secs. Co.*, 184 U.S. 199, 235 (1902)). Poe joined two claims in his complaint: a 42 U.S.C. § 1983 claim and a state-law negligence claim. [Record Document 1 at 7–8]. This Court had original federal-question jurisdiction over the § 1983 claim against Defendants for their work at DWCC. *See* 28 U.S.C. § 1331. If a district court has original jurisdiction over a claim, supplemental jurisdiction exists over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims are part of the "same case or controversy" when they "derive from a common nucleus of operative fact." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), *superseded by statute on other grounds by* 28 U.S.C. § 1367(c)(3)). As the same medical care or lack thereof gives rise to Poe's Eighth Amendment claim and his medical malpractice claim, the Court had supplemental jurisdiction over Poe's MLSSA claim against Fuller and Hearn when Poe filed the case. Although the § 1983 claim related to Defendants' conduct at DWCC has been dismissed, [Record Document 57], a district court has discretion to retain jurisdiction over supplemental state-law claims even if

the claim providing for original jurisdiction has been dismissed, *see Mendoza*, 532 F.3d at 346

(citing *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)). Therefore,

if Hearn and Fuller were the only necessary defendants, this Court would have subject-matter

jurisdiction over the MLSSA claim against them. Because this Court has jurisdiction, it may

examine *sua sponte* whether the State of Louisiana is a necessary and indispensable party on

Poe's claims against Defendants related to the care they provided at DWCC. *Cf. Jaffer v.*

*Standard Chartered Bank*, 301 F.R.D. 256, 259–60 (N.D. Tex. 2014) (deciding a Rule 19 joinder

issue *sua sponte* in a diversity case).

### E.    <u>The State of Louisiana as a Necessary Party</u>

Under Rule 19, a court must first determine whether an absent person is necessary to

the litigation. *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986), *superseded by statute*

*on other grounds by* 28 U.S.C. § 1447(e). A person is necessary if, among other things, "in that

person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ.

P. 19(a)(1)(A). As the Louisiana courts have made clear, only the State of Louisiana can be cast

in judgment on a medical malpractice claim controlled by the MLSSA. *Detillier*, 2003-3259, p.

16; 877 So. 2d at 111; *Gettys*, 2013-1138, p. 7; 145 So. 3d at 464. Without the State as a party,

"there is no entity against whom a judgment could be rendered." *Gettys*, 2013-1138, p. 7; 145

So. 3d at 464. As this Court has already dismissed the § 1983 claim against Defendants arising

from their conduct at DWCC, [Record Document 57], Poe can recover damages for the

injuries he allegedly suffered at DWCC only if the State of Louisiana is joined as a party. As a

result, the State of Louisiana is required to be joined under Rule 19.

### F.    The Feasibility of Joining the State of Louisiana

Because the State of Louisiana is a necessary party to Poe's MLSSA claims against Defendants, this Court must now determine whether the State can feasibly be joined. In *Stewart v. Gusman*, the Eastern District of Louisiana confronted this exact question. No. CV 07-4132, 2009 WL 10679822 (E.D. La. Jan. 5, 2009). An inmate filed a § 1983 claim against the Orleans Parish Sheriff and a medical malpractice claim against a doctor at the state hospital to which the inmate was taken for care. *Id.* at *1. The inmate did not join the State of Louisiana as a defendant. *Id.* The court observed:

> Under *Detillier*, it is clear that [the physician] is immune from judgment under Louisiana law, and that the State of Louisiana is the only party that can be answerable in damages based on the allegations in [the inmate]'s petition. Thus, it is equally clear that [the inmate]'s claims against [the physician] qua the State of Louisiana cannot proceed in this Court as a matter of Louisiana's sovereign immunity under the Eleventh Amendment.

*Id.* at *3.

This Court agrees with the Eastern District's analysis. "[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citing *Great N. Life Ins. Co. v. Read*, 322 U.S. 47 (1944); *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573 (1946)). MLSSA claims provide for monetary damages, La. Stat. Ann. § 40:1237.1(C), which, under *Detillier*, are available from the State of Louisiana only, 2003-3259, p. 16; 877 So. 2d at 111. Hence, this Court cannot assert jurisdiction over an MLSSA claim for money damages unless the State of Louisiana has waived its sovereign immunity.[9]

_____

[9] Although a state can also be sued if Congress has validly abrogated the state's sovereign immunity, *see Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citing

"A state does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts." *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) (citing *Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (per curiam)). To find a waiver, "a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found." *Edelman*, 415 U.S. at 673 (quoting *Great N. Life Ins. Co.*, 322 U.S. at 54). This intention is present "only in the most exacting circumstances." *Magnolia Venture Capital Corp. v. Prudential Secs., Inc.*, 151 F.3d 439, 443 (5th Cir. 1998). Nothing in the text of MLSSA suggests that the State of Louisiana intends to allow itself to be sued in federal court for the malpractice of state-employed physicians. The MLSSA expressly defines the right to bring an MLSSA action "as a special substantive sui generis statutory grant in the domain of public law." La. Stat. Ann. § 40:1237.1(C). In case the legislative intent were not clear, the statute reinforces the point: "Otherwise than as provided by [the MLSSA], a patient shall not have a right to recover losses due to malpractice from the state or from a state health care provider . . . ." *Id.* § 40:1237.1(D)(1). Given this language, a finding of waiver would be proper only if the MLSSA specifically provides for suit in federal court. No language in the statute even hints at such an intention. Hence, this Court finds that the State of Louisiana has not waived its sovereign immunity from suit in this Court for claims arising under the MLSSA. In the absence of waiver, sovereign immunity prevents this Court from joining the State as a defendant on the MLSSA claim against Defendants related to their conduct at DWCC.

---

*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)), Poe's MLSSA claim arises under state, not federal, law.

### G. The Indispensability of the State of Louisiana

Because the State of Louisiana is a necessary party to this proceeding but cannot be joined, this Court must now consider the second step of the Rule 19 analysis, "determin[ing] whether the party is 'merely necessary' to the litigation, or in fact 'indispensable.'" *Moss v. Princip*, 913 F.3d 508, 515 (5th Cir. 2019) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 117–19 (1968)). That determination turns on four factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The analysis of these factors is case-specific. *Moss*, 913 F.3d at 515 (citing *Provident Tradesmens*, 390 U.S. at 118 n.14) ("[T]here is no prescribed formula for determining in every case whether a person is an indispensable party."). If the person who cannot feasibly be joined is indispensable, the action must be dismissed. *Provident Tradesmens*, 390 U.S. at 118.

The State of Louisiana suffers no prejudice by not being joined; after all, it cannot be cast in judgment if it is not a party. However, Poe would be prejudiced if the State were not joined as there would be no defendant from whom he could recover. Hearn and Fuller would also suffer prejudice if the State were not joined. Subjecting them to the burden of participation in this suit is only justifiable if the end result of the suit could provide Poe with some relief. Such relief is available only if the State of Louisiana is joined, and so this first factor favors a finding that the State of Louisiana is an indispensable party.

As the MLSSA prohibits casting Hearn and Fuller in judgment, *see Detillier*, 2003-3259, p. 16; 877 So. 2d at 111, there is no way at present to craft a judgment that would provide Poe with the monetary relief that he seeks. Without that monetary relief, judgment would be utterly inadequate. Poe has been transferred from DWCC and has now had the hip surgery he sought, [Record Documents 45-2 at 33–35 and 45-3 at 26, 35], so money damages are the only way his injuries could be redressed. Thus, the second and third factors also support a conclusion that the State of Louisiana is indispensable to this action.

Finally, Louisiana courts provide an "adequate forum" in which Poe can prosecute his malpractice claim against Defendants for their conduct at DWCC. *See Stewart*, 2009 WL 10679822, at *5. When a federal court declines to exercise supplemental jurisdiction of state-law claims, such claims may be refiled in state court. *See Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018) (interpreting 28 U.S.C. § 1367(d)). Although requiring Poe to pursue his DWCC claim in state court while his claims regarding Hearn's care at LPDC remain pending in this Court may perhaps be less convenient for Poe, that result does not render the state court inadequate.[10] The final factor thus also counsels against maintaining this action in the State's absence. In light of the four Rule 19(b) factors, this Court concludes that the State of Louisiana is an indispensable party without which the claims against Defendants regarding the care they provided Poe at DWCC cannot proceed. Therefore, this Court will dismiss Poe's negligence claim related to that care.

---

[10] The Court notes that there is a remote possibility that separating the two different claims against Hearn could result in a double recovery. If the DWCC claim proceeds to trial in state court or the LPDC claims proceed to trial in this Court, procedures or instructions can be crafted to avoid that possibility.

## IV.    Poe's Standing

Because Defendants are immune from judgment on Poe's MLSSA claim, *see Detillier*, 2003-3259, p. 16; 877 So. 2d at 111, Poe, even if victorious, would recover nothing, *see Texas All. of Energy Producers Workers Comp. Self-Insured Grp. Tr. v. La. State Univ. Health Scis. Ctr.-Shreveport*, No. CIV.A. 10-1216, 2011 WL 4079228, at *3 (W.D. La. Sept. 13, 2011). This fact raises the possibility that Poe might lack standing to pursue his MLSSA claim in this Court.

Federal courts may only hear "cases" and "controversies" that are "amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (citing *Muskrat v. United States*, 219 U.S. 346, 356–57 (1911)). For a case to be justiciable, the plaintiff must have standing. *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). As Article III standing is a component of subject-matter jurisdiction, this Court must address it *sua sponte. See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331–32 (5th Cir. 2002) (citing *SEC v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 328 (5th Cir. 2001)). Article III standing requires that the plaintiff have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). At issue in this case is the third prong. An injury is redressable if a "'favorable decision will relieve a discrete injury,'" though the decision need not "'relieve [the plaintiff's] *every* injury.'" *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 514 (5th Cir. 2017) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)). Money damages, such as those sought by Poe, are a valid form of redress. *See In re Deepwater Horizon*, 739 F.3d

790, 802 (5th Cir. 2014). The relevant question is "whether 'the prospect of obtaining relief from the injury as a result of a favorable ruling is too speculative.'" *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385 (5th Cir. 1986) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

Poe has had his hip replacement and is no longer incarcerated at a facility where either Hearn or Fuller is employed. [Record Documents 45-2 at 33–35 and 45-3 at 26, 35]. As a result, money damages are the only possible remedy this Court could order if a jury were to find that Defendants had committed malpractice at DWCC. Under the MLSSA, money damages cannot be awarded against individual state health care providers. *Detillier*, 2003-3259, p. 16; 877 So. 2d at 111. Because Defendants are immune from damages, this Court cannot redress Poe's alleged injury and, in consequence, Poe lacks standing to proceed in this Court.[11] Hence, even if this Court were wrong to conduct the Rule 19 analysis *sua sponte*, this Court would still be obligated to dismiss Poe's MLSSA claim against Defendants for their conduct at DWCC.

## V.    Conclusion

Poe can only recover on his claim for Defendants' alleged malpractice at DWCC if the State of Louisiana is joined as a party. Sovereign immunity prevents this Court from joining the State as a party to Poe's MLSSA claims. Hence, this Court has two options: allow the MLSSA claim to proceed against Hearn and Fuller only or dismiss the action. *See* Fed. R. Civ.

---

[11] While the State of Louisiana can be cast in judgment for money damages due to its physicians' malpractice, *Detillier*, 2003-3259, p. 16; 877 So. 2d at 111, this Court, as discussed above, lacks subject-matter jurisdiction to enter such a judgment as a result of the State's sovereign immunity. Hence, this Court will not grant Poe an opportunity to amend his complaint to add the party that could be cast in judgment.

P. 19(b). Because this Court cannot cast Fuller and Hearn in judgment on Poe's malpractice claim arising from the care they provided him at DWCC, *see Detillier*, 2003-3259, p. 16; 877 So. 2d at 111, the State is indispensable to this litigation. Without the State present as a defendant, Poe's potential recovery is zero dollars, and so his injury is not redressable.

Therefore, **IT IS ORDERED** that the claims against Hearn and Fuller arising from the care they provided to Poe at DWCC are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. Defendants' motion for summary judgment [Record Document 78] and Poe's motion to strike [Record Document 82] are **DENIED AS MOOT**.

Poe's negligence claim against Hearn for the care she provided at LPDC will be addressed in a separate ruling. His § 1983 claim against Hearn for her conduct at LPDC remains pending.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this ___3rd___ day of _____September_____, 2019.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE